MaNLT, J,
Upon the argument with which we have been favoured in this case, the matter was made to turn upon two points:
1.. Whether the .statusJof petitioner,, as a free negr.o, continued, notwithstanding the deed entered into with James R. Love,-
2. Whether, as a free man, he could be conscribed'for such .services as are’indicatod in the act of Congress of 11th February, 1864, (1 Cong., 4 boss., chap. 19, sec. 1.)
The part of the act pertinent t.o our inquiry, is in the foliowing words: “that all male free.negroes, and other *40 persons of color, resident in the Confederate State's, between tbe ages of 18 and SO years, shall be held liable to perform such duties with tbe army, or in connection with the military defences of the country, in the way of work upon fortifications, or in government works for the production or preparation of material of war, or in military hospitals, as the Secretary of War may, from time to time, prescribe ; and, while engaged in the performance of such duties, shall receive rations and clothing and compensation at the rate of'§l 1 a month, under such rules and regulations as the said Secretary may establish/’ *
It is admitted that the government does not proceed against the petitioner as one hound to serve as a slave, and who may, therefore, under the act ®f Congress, he impressed; but it claims him as a free negro, subject to he conscribed, and to do duty under the section of the act which has just been quoted.. , •
The petitioner contends that the effect of the. deed to Love is'to degrade him from tfyo condition of a free man,' and, by consequence, ic> withdraw him from liability to conscription for.military service.
In the case of Phillips vs. Murphy, 4 Jones, 45, it’was-decided that a deed made by a free negro, of his services for a term'of years, did not operate to make a slave of him, or to pass a property in him ; hut simply to give the grantee a right to his services'upon an executory agreement, for a breach whereof an sftiion of covenant would lie! • So, in the ease before us, tlio deed for service for a term of years, does not alter tbe social or political condition of the negro. No other pr different legal consequences result from his agreement, than if it had been entered into by a white man. Both, upon a breach of it, *41 are subject to be sued for damages. Neither is subject to have enforced against him a specific execution. ■ ♦
Besides the direct authority J have quoted, it may be observed that the petitioner can only maintain his suit upon the assumption that lie is a free man. There is'.no middle ground upon which he can stand. He- is either a slave or a free man. If the latter; he is of the class intended to he embraced by the first section of the act of 11th Feb , 1864; if the former, he cannot sue, hut his suit- must- he dismissed and he remitted to custody. If he' says I am a free man, he abandons his point; if he says he is,a slave, his declaration puts him out of Court.
2. The question in the second place seems to he based upon the idea that all men must he ‘put into the army upon a footing of equal rights, and he permitted to chooso the arm of service to which they will respectively-attach themselves. This, we think, is a palpable mistake. The organization of aii army consists in dividing it into parts, and'assigning these parts to different modes of service. This is essential to give it efficiency, and to distinguish it' from a fighting mob. ’ . -
Without descending to minute divisions, there is found in ever}- army a body of infantry, who are on foot, and armed with 'the musket and rifle ; a body o(' cavalry-who are on horseback, and armed with sabre and pistol; body of artillery, who are in charge of the cannon, and a body of engineers, who are not armed at all ; but with ¡spade and shovel and pick axes, are in charge of fortifications, sapping and mining, and the like. Here are varieties- of seryice, of unequal eligibility ; and yet the public authorities, without question of right, assign men to these departments, as they deem them best fitted for •one or another, whether they.-will oi; no. If this can he- *42 done by executive and ministerial officers of the law, surely it can be done by the law itself. If regulations made by the Wár Department, as incidental to its power to organize an army, can justify an arbitrary assignment, the organic law itself caá prescribe such regulations.
So it is entirely competent, according to regulations, and the Unquestioned usages in the army, for officers to detail.or assign men for the performance of .work on the fortifications, in thé workshops producing the material of war,'and in the hospitals for taking care of the sick and wounded ; and it seems plain, if this thing can be done as an incidental power, of which there hasi never been any question, the detail may be preordained by the law authorizing the force to be raised.
We can perceive no reason why the law, in authorizing the levy of troops from time to time, 'may not provide that any portion oj" these (the latest conscripts for instance.) shall be employed in the least responsible positions : that is, on the fortifications, in the shops and hospitals, and. as wagon and ambulance drivers.
. By an examination of the act' (19th Feb. 18.64, chap. 79) it will he seen that what is here indicated, isu.ll that has been attempted by Congress. For tbe purpose of giving greater efficiency to tbe army by preventing the withdrawal of men from the field, the act authorizes the conscription of free negroes for the purpose of performing duty “ with the army, and in connection with the military defences of the country,” in working on fortifications, in workshops, hospitals, &c. If these duties could be assigned the free negroes, after they got into the army (of which there seems be no question) a fortiori could they be- assigned'to these duties by the law oonscribing' them.
*43 We have been willing to put the ease- of the petitioner upon the most favorable ground, and to consider it as the ease of a white man, entitled to all the rights and privileges of the race ; and, with respect to him in that point of view, the law is constitutional and proper to be enforced.
When we consider the difference, before the law, between the social and political conditions of the racés, how it has been its uniform policy to keep them separate so'cially, the law appears to be now eminently proper. Its special features seem to be in conformity only to the unbroken system of our legislation, and to be necessary to preserve homugenioty in our. social* fabric.
When it became necessary, therefore, as it is declared to be in the preamble to this and other acts of fhe Congress passed at the same, session, to conscribe or impress negroes for military dutyj it was a requirement of social order that they should be brought in in sucli way as not to violate the distinctions of race. It would "not have been proper, and according to usage, to mix them with the whites in such way as to compel social equality.
The idea of equal rights, upon which the petitioner’s ,case seems to he based, is not practicable in the government of an army..
Troops, to give them' efficiency, must he moved by one head. The unexperienced and excitable may he kept in the rear, while veterans may he selected, at the will of the commander, to occupy the posts of danger. Regiments, proved to he untrustworthy in the hour of trial, maj l^e removed from the post of honor, and their places supplied with others who have, been found more reliable. Individuals, whose dispositions or whose loyalty may he suspected, may be removed from opportunity and temptation, by being detailed for service in tbe rear, as cooks, *44 teamsters, nurses and die' like. It has never been imagined that the different'divisions sf the army could be permitted to .contend, or by any means determine for themselves, their respectivo positions and duties in the same.'
There can be but little room in an army for the enjoyment of civil rights. Its government is necessarily absolute, and, |n most respects, according to the will of a single mind, the great fend paramount duty being to give it force and rapidity oí action, and'to guard it against dangers, internal and external.
Our conclusion, then, is :
T. That the.first section of the act Congress, 17th Feb., 1SG4, chap.-79, is simply a conscription of free negroes for certain duties pertaining to military service.
2. That it is within the scope of authority belonging to the War Department, incidental to the war power, to place-men, and of course free negroes,, in the army, in any-position where they may be deemed most safe from improper influences, and/for which they may bo deemed best fitted. -
3. If-the War Office can do this as an incident io'the. power to organize thu army, a fortiori may it he done by Congress, which, of right, declares the war, and authorizes the raising of the army. In the latter, the power, must ho the more complete and perfect.., .
4. That it was not only the right of the -Congress to dispose of the negro conscripts as the act prescribes, hut' there, was also a fitness and propriety, in such disposition, arising out of the-condition qf society amongst us, and all prevhnis legislation in résppct to the negro race.
The judgment of this Court is, in accordance with, th© judgment of the Court below, that the petitioner be re.«fitted to the custody pf-the officer, and'that ho pay the «osts of this proceeding, to be taxed by the Clerk.